UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACKEE AARON MOSS,

    Plaintiff,

v.                                           Hon. Sally J. Berens

COMMISSIONER OF                    Case No. 1:20-cv-243
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claims for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence and in accordance with the law it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks judicial review of this decision.

For the following reasons, the Court will **affirm** the Commissioner's decision.

**Standard of Review**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is

limited to determining whether the Commissioner applied the proper legal standards in making his decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and those findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Dept. of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**Procedural Posture**

Plaintiff filed applications for DIB and SSI on August 21, 2017, alleging that he became disabled as of December 9, 2016, due to depression, anxiety, attention deficit hyperactivity disorder (ADHD), and sleep disorder. (PageID.108.) Plaintiff was age 37 at the time of his alleged

onset date. (*Id.*) Plaintiff had previous employment as a document reviewer/paralegal/attorney. (PageID.66, 302.) After Plaintiff's applications were denied, he requested a hearing before an Administrative Law Judge (ALJ).

ALJ Amy L. Rosenberg conducted a hearing on March 1, 2019, and received testimony from Plaintiff and David Huntington, an impartial vocational expert. (PageID.56.) On April 19, 2019, the ALJ issued a written decision finding that Plaintiff was not disabled from his alleged onset date through the date of the decision. (PageID.56–69.) The Appeals Council denied Plaintiff's request for review on January 17, 2020, making ALJ Rosenberg's March 1, 2019 decision the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432,434 (6th Cir. 2007).

Plaintiff initiated this action for judicial review on March 18, 2020.

**Analysis of the ALJ's Opinion**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

After finding that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, the ALJ found that Plaintiff suffered from the following severe impairments: (1) depressive disorder; (2) anxiety disorder; and (3) ADHD. (PageID.59.) At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.59–60.) The ALJ specifically considered listings 12.04, 12.06, and 12.11. As for the "paragraph B" factors, the ALJ found that Plaintiff was mildly limited in the areas of understanding, remembering, or applying information; not limited at all in the area of interacting with others; moderately limited in the areas of concentrating, persisting, and maintaining pace; and moderately limited in the areas of adapting and managing oneself. (*Id.*)

With respect to Plaintiff's RFC, the ALJ determined that Plaintiff retained the capacity to perform a full range of work at all exertional levels subject to the following nonexertional limitations:

> He can understand, remember, and carry out simple, routine tasks, and simple work-related decisions. He cannot perform a job that requires compliance with strict time deadlines or strict production quotas. He can tolerate occasional changes in the routine work setting.

(PageID.61.)

At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work. (PageID.66–67.) At step five, however, based on testimony from the vocational expert, the ALJ found that Plaintiff could perform the occupations of hospital food service worker, industrial cleaner, and linen room attendant, 539,000 of which existed in the national economy that an individual of Plaintiff's age, education, work experience, and RFC could perform. (PageID.67–68.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## Discussion

Plaintiff raises one issue in his appeal: the ALJ failed to properly assess the opinions of his treating physician, Douglas Ruben, Ph.D., which were supported by a previous consultative examination by Jonathan Shy, Ph.D., as well as other evidence in the record. (ECF No. 14 at PageID.516.)

The ALJ evaluated three medical opinions. First, Leonard Balunas, Ph.D., the State agency psychological consultant, opined that Plaintiff was moderately limited in the areas of understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, and adapting or managing himself, and mildly limited in interacting with others.

(PageID.113.) Dr. Balunas opined that Plaintiff could understand and remember one- and two-step instructions, could carry out one- and two-step tasks that do not require sustained concentration or working in close proximity with others, and could tolerate occasional changes in the work setting. (PageID.115–16.) The ALJ found Dr. Balunas's opinion mostly persuasive, concluding that the portion of the opinion limiting Plaintiff from working in close proximity with others was not supported by the record. (PageID.66.)

Next, consultative examiner John Jeter, M.A., L.L.P., L.M.S.W. (and his supervisor, Hugh Bray, Ph.D., L.P.), opined that Plaintiff's ability to comprehend and carry out simple directions and perform repetitive, routine, simple tasks was within normal limits and that his ability to comprehend complex tasks was within normal limits. Mr. Jeter also opined that Plaintiff was able to get along appropriately with supervisors and the public. (PageID.425.) The ALJ found most of the opinion persuasive, but found the portion of the opinion regarding Plaintiff's ability to comprehend complex tasks unpersuasive because the record showed that Plaintiff could not understand, remember, and carry out complex tasks on a sustained basis due to his psychological symptoms. (PageID.66.)

> Finally, the ALJ found Dr. Ruben's opinion unpersuasive as follows:
>
> Dr. Ruben opined that the claimant is unable to meet competitive standards in the ability to: complete a normal workday/week without interruptions from psych-based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and deal with stress of semiskilled and skilled work. He opined that the claimant is seriously limited, but not precluded, in the ability to: remember work-like procedure; maintain regular attendant [sic] and be punctual within customary usually strict tolerances; sustain an ordinary routine without special supervision; respond appropriately to changes in routine work setting; deal with normal work stress; and set realistic goals and make plans independently of others. Dr. Ruben opined that the claimant would be absent about three days per month. (10F). Dr. Ruben's opinion is not supported by or consistent with the record as a whole. It is clear that the claimant has difficulty sustaining a work routine when performing complex work, but I find that he could sustain simple, routine work activity, as evidenced by medication controlling his ADHD and depression, his

6

>  work doing legal document review, his dog training and breeding, and his work on political campaign.

(PageID.66.)

Because Plaintiff filed his applications after March 27, 2017, the ALJ evaluated the medical opinions pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. These regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ will articulate his or her determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. *Id.* §§ 404.1520c(1)–(5), 416.920c(1)–(5). The ALJ must explain his or her consideration of the supportability and consistency factors, but absent circumstances not present here, is not required to explain how the remaining factors were considered. *Id.* §§ 404.l520c(b)(2), (3), 416.920c(b)(2), (3). The regulation defines "supportability" and "consistency as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* §§ 404.1520c(1)–(2), 416.920c(c)(1)–(2).

Plaintiff argues that the ALJ failed to properly evaluate Dr. Ruben's opinion because she failed to consider that it was consistent and supported by other probative evidence in the record.

7

First, Plaintiff contends that the ALJ failed to recognize that Dr. Ruben's opinion was consistent with a consultative examination by Jonathan D. Shy, Ph.D., on January 31, 2013, when Plaintiff was age 33. (PageID.340–52.) Plaintiff notes that Dr. Shy subjected Plaintiff to numerous intellectual tests and concluded that, based on Plaintiff's test scores, Plaintiff would very likely have difficulty absorbing, processing, retaining, and retrieving visual material as well as his peers. (ECF No. 14 at PageID.533 (citing PageID.350).) Plaintiff contends that the ALJ simply ignored this evidence.

However, Dr. Shy rendered his opinion almost four years prior the commencement of the relevant period. While Dr. Shy's findings speak to Plaintiff's abilities in January 2013, they were not necessarily probative of his abilities during the relevant period. Since Dr. Shy's examination, Plaintiff had passed he Michigan Bar Examination, worked full-time as a document reviewer, and volunteered for a judicial campaign. (PageID.83–85, 495.) Instead, the ALJ logically focused on evidence pertaining to the relevant period. For example, during the November 29, 2017 consultative examination, Plaintiff reported that his medications were effective, he lived alone, performed his own activities of daily living independently, made his own dental and medical appointments, and helped with child care. (PageID.422.) Based on the testing during that examination, the consultative examiner opined that Plaintiff could comprehend and carry out simple directions and perform repetitive, routine, simple tasks. (PageID.66, 425.) Thus, the ALJ did not err by failing to consider Dr. Shy's findings in her consistency and supportability analysis.

Plaintiff also contends that the ALJ failed to explain why Dr. Ruben's "copious notes" from his numerous therapy sessions with Plaintiff over the years, showing that Plaintiff required almost continuous support from his mother, girlfriend, and therapist simply to perform activities of an average daily life, failed to support his opinion. (ECF No. 14 at PageID.533.) Plaintiff argues

8

that, instead of considering the entire record, the ALJ selectively chose evidence of Plaintiff's achievements, while ignoring evidence that Plaintiff's psychological symptoms precluded him from sustaining full-time work. (*Id.* at PageID.534.) However, the ALJ's decision shows that she fully and accurately discussed Dr. Ruben's treatment notes from the relevant period earlier in the decision, which showed that, while Plaintiff struggled with motivation and organization, he made excellent progress with treatment, including maintaining focus and attention to details, completing tasks, sustaining daily structure, and seeking out and following up on new opportunities. (PageID.492, 493, 497, 498, 500, 502.) The treatment notes also show that Dr. Ruben often observed that Plaintiff showed no signs of depression or regressive behaviors. (PageID.492, 494, 497.) The ALJ also found that Plaintiff's volunteer activity for a judicial campaign, his dog training and breeding, and his performance of work as full-time legal document reviewer were inconsistent with Dr. Ruben's opinions. (PageID.66.)

As Plaintiff acknowledges, an ALJ is not required to discuss every piece of evidence in the record. *See Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004). "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Id.* Here, there is no indication that the ALJ "cherry-picked" the record in order to reach a predetermined result. While Plaintiff points to other evidence in the record that could have supported a different conclusion, it is not for this Court to second-guess the ALJ's decisions when supported by substantial evidence. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (a reviewing court "does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ"). Moreover, an ALJ's decision is not subject to reversal, even though there may be

substantial evidence in the record that would have supported the opposite conclusion, if substantial evidence also supports the conclusion that was reached by the ALJ. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).

Here, the ALJ's decision shows that she fully considered the evidence of record and properly evaluated Dr. Ruben's opinion. Thus, Plaintiff's claim of error is rejected.

## Conclusion

For the reasons stated above, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

An order consistent with this opinion will enter.

Dated: June 4, 2021 /s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge